**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 18-cr-089-WJM

UNITED STATES OF AMERICA,

 Plaintiff,

v.

1. **PERRY WAYNE SUGGS, JR.,**

 Defendant.

---

**ORDER DENYING MOTION TO DISMISS ON SPEEDY TRIAL GROUNDS**

---

  A jury convicted Defendant Perry Wayne Suggs, Jr. ("Suggs"), of one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). (ECF No. 136.) Currently before the Court is Suggs's Amended Motion to Dismiss for Violation of Speedy Trial Rights (ECF No. 123), which Suggs filed in the middle of his first trial day. For the reasons explained below, this motion will be denied.

### I. BACKGROUND

  In February 2018, the Government charged Suggs with one count of being a felon in possession of a firearm. (ECF No. 1 (indictment); *see also* ECF No. 24 (superseding indictment).) The Court set a trial date of May 7, 2018 (ECF No. 22), but Suggs requested five months' worth of continuances and then filed a suppression motion (ECF Nos. 35, 51, 54). The Court resolved the suppression motion on March 11, 2019 (ECF No. 89), and set his trial to begin on March 25, 2019 (ECF No. 90).

  On March 19, 2019, Suggs filed a document stating, among other things, that he

would "be filing a motion to dismiss for violation of his speedy trial rights . . . prior to trial." (ECF No. 109 ¶ 7.) At the Final Trial Preparation Conference the next day, the Court informed Suggs's counsel that the trial would go forward regardless, and the Court would decide the speedy trial issue after trial, assuming a conviction.

On the morning of the first day of trial (March 25), not long before courtroom proceedings began, Suggs filed a Motion to Dismiss for Violation of Speedy Trial Rights. (ECF No. 120.) About an hour later, the Court struck that motion for exceeding the undersigned's page limits, with leave to refile. (ECF No. 122.) Suggs filed his amended motion (the motion currently under consideration) later that same day. (ECF No. 123.)

## II. ANALYSIS

Suggs argues that his rights have been violated under both the Speedy Trial Act, 18 U.S.C. §§ 3161–74 (the "Act"), and the Sixth Amendment's speedy trial guarantee. The Court will discuss each possibility in turn.

### A. Speedy Trial Act

Criminal trials must "commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). "If a defendant is not brought to trial within [seventy days, after accounting for tolling], the information or indictment shall be dismissed on motion of the defendant." *Id.* § 3162(a)(2).

1. Speedy Trial Calculation

Here, Suggs's initial appearance (which was later than the filing of the indictment) was on February 27, 2018. (ECF No. 6.) His trial began on March 25,

2019, at 9:18 AM, when *voir dire* began.  (*See* ECF No. 125 at 2.)[1]  Thus, 391 calendar days elapsed between the initial appearance and the beginning of trial.[2]  At least 321 of those days must be tolled or Suggs did not go to trial within 70 Speedy Trial days.

Tolling took place in this case under three circumstances authorized by the Act:

- "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," *id.* § 3161(h)(1)(D);[3]

- "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court," *id.* § 3161(h)(1)(H); and

- "[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial," *id.* § 3161(h)(7)(A), commonly known as an "ends-of-justice continuance" or "EOJ continuance."

---

[1] "For purposes of the [Speedy Trial Act], a jury trial commences with the voir dire." *United States v. Arnold*, 113 F.3d 1146, 1149 (10th Cir. 1997).

[2] For counting purposes, the day on which the Speedy Trial clock begins to run is "day zero."  *See* Fed. R. Crim. P. 45(a)(1); *see also United States v. Margheim*, 770 F.3d 1312, 1317, 1319, 1321 (10th Cir. 2014) (calculating 356 days between May 24, 2011, and May 15, 2012).

[3] Unlike the counting method described in n.2, above, and unlike the typical practice in federal civil and criminal litigation, this exception counts the day the motion was filed as day one, not day zero.  *See Margheim*, 770 F.3d at 1322.  In other words, a motion that falls under subparagraph (D) will always toll the Speedy Trial clock for at least one day, even if resolved the same day.

The question before the Court is whether the events falling under these exceptions amounted to at least 321 days of tolling.

The chart below shows that tolling events, and the periods for which they tolled the Act, were often overlapping. They combine into four blocks of tolling that the Court has labeled A, B, C, and D:

| | **TOLLING EVENTS** | **NUMBER OF DAYS TOLLED** |
|---|---|---|
| A | **2/28/18**: Suggs's Unopposed Motion to Continue Arraignment, Detention Hearing and Discovery Hearing (ECF No. 9), *through* **3/1/18**: order granting motion (ECF No. 11), *plus*, that same day, Suggs's counsel's Motion to Withdraw as Counsel of Record (ECF No. 13), *through* **3/2/18**: order granting that motion (ECF No. 16) | 3 |
| B | **4/30/18**: Suggs's Unopposed Motion to Continue Trial [by] 60 Days (ECF No. 35), *through* **5/1/18**: order granting that motion as a 60-day EOJ continuance (ECF No. 37), *plus*, that same day, commencement of the 60-day exclusion, originally to conclude on 6/30/17, *but extended by* **6/12/18**: Suggs's Unopposed Motion to Vacate All Current Deadlines and Dates and to Exclude 90 Days from the Speedy Trial Act (ECF No. 51), *granted that same day* as a 90-day EOJ continuance beginning on July 1, 2018, *plus* **7/1/18**: commencement of 90-day exclusion, originally to conclude on September 29, 2018, *but effectively extended by* **9/7/18**: Suggs's Motion to Suppress (ECF No. 54), *through* **2/25/18**: Suggs's Motion to Suppress taken under advisement (*see* ECF No. 77), *through* **3/11/19**: order denying that motion (ECF No. 89), *plus*, that same day, Government's Unopposed Motion to Extend the Deadline for Filing Motions *in Limine* and to File Jury Instructions with Other Pretrial Deliverables (ECF No. 92), *through* **3/12/19**: order granting that motion (ECF No. 93), *plus*, that same day, Government's Unopposed Motion to Extend the Trial Duration by One Day (ECF No. 94), *granted that same day* (ECF No. 95) | 317 |
| C | **3/15/19**: Government's Motion *in Limine* (ECF No. 97), *through* **3/19/19**: order granting that motion in part and denying it in part (ECF No. 112) | 5 |

| | **TOLLING EVENTS** | **NUMBER OF DAYS TOLLED** |
|---|---|---|
| D | **3/25/19 [8:05 AM]**: Suggs's original Motion to Dismiss for Violation of Speedy Trial Rights (ECF No. 120), *stricken that same day* for failing to comply with the undersigned's practice standards regarding length of motions (ECF No. 122) | 1 |
| | **TOTAL EXCLUDED** | **326** |

Because tolling amounted to 326 days, Suggs was brought to trial within 65 Speedy Trial days, less than the 70-day maximum.

2. Whether "Any Pretrial Motion" Has Exceptions

Suggs argues, however, that some of the motions listed in the above chart should not count as "pretrial motion[s]" for purposes of 18 U.S.C. § 3161(h)(1)(D).

a. *"Ministerial" Motions*

Suggs labels his Unopposed Motion to Continue Arraignment, Detention Hearing and Discovery Hearing (ECF No. 9) as "purely ministerial" and therefore "not the type of 'pretrial motions' that the [Speedy Trial Act] contemplates."  (ECF No. 123 at 4.)  That motion accounted for one of the three excludable days in block A, above.  Suggs claims that the Government's Unopposed Motion to Extend the Deadline for Filing Motions *in Limine* and to File Jury Instructions with Other Pretrial Deliverables (ECF No. 92) is likewise ministerial and so should not count.  (ECF No. 123 at 6.)  That motion accounted for one day of tolling in block B (3/12/19).[4]  Finally, Suggs puts the Government's Unopposed Motion to Extend the Trial Duration by One Day (ECF No. 94) into the "ministerial" category.  (*Id.*)  Assuming the separate motion filed the day

---

[4] Technically, it counted for two days because it was filed on March 11 and resolved on March 12.  But March 11 was also the day the Court resolved Suggs's Motion to Suppress, so March 11 would have been tolled in any event.  Thus, only March 12 matters for purposes of this motion.

5

before should not have counted, that motion added one day of tolling in block B (3/12/19).[5]

Suggs has two arguments why these motions should not toll the Speedy Trial clock. His first argument (ECF No. 123 at 5) has three premises: one, the Court's Order Setting Trial Date and Related Deadlines established an April 3, 2018 deadline for "pretrial motions" (ECF No. 22 ¶ A); two, after this deadline passed, the Government filed motions such as its Motion to Contact Chambers to Reset Final Pretrial Conference (ECF No. 83) and its Motion to Extend the Deadline for Filing Motions *in Limine* (ECF No. 93); and three, the Court did not dismiss or strike these motions as untimely. Therefore, Suggs says, these motions must not have been "pretrial motions," but were, instead, "ministerial scheduling motions." "By the same token," he continues, those sorts of motions should not fall within the Speedy Trial Act's "any pretrial motion" exception.

But this Court's treatment of the phrase "pretrial motion" for purposes of a scheduling order has no necessary effect on—indeed no influence at all—on the meaning of "any pretrial motion" under 18 U.S.C. § 3161(h)(1)(D). The undersigned's criminal scheduling orders are not interpretations of Act, nor some sort of *post hoc* legislative history. Accordingly, the Court rejects the notion that "ministerial scheduling motions" are not "pretrial motions" for Speedy Trial purposes.

Suggs's second argument (ECF No. 123 at 5–6) is that the Fourth Circuit, in a case mentioned—but not endorsed—by the Tenth Circuit, has frowned upon counting "merely ministerial" motions for Speedy Trial tolling purposes. *See United States v.*

---

[5] If the March 11 motion counted, then March 12 was tolled regardless, because it is the day the Court decided the March 11 motion.

*Vogl*, 374 F.3d 976, 985 n.10 (10th Cir. 2004) (quoting *United States v. Parker*, 30 F.3d 542, 549 (4th Cir. 1994)).  The Court declines to follow the Fourth Circuit's lead.  The Fourth Circuit's approach would mean that district courts cannot trust that a motion—something requiring the Court's ruling—is actually a "pretrial motion" for Speedy Trial purposes.  This is contrary to the Tenth Circuit's holding that "the exclusions in § 3161(h) are automatic."  *United States v. Young*, 45 F.3d 1405, 1411 n.6 (10th Cir. 1995); *see also United States v. Loughrin*, 710 F.3d 1111, 1120 (10th Cir. 2013) ("[A] motion under § 3161(h)(1)(D) need not cause 'actual delay' in order to exclude the period after its filing, and before its disposition . . . .  The focus of the subsection is whether the court's intervention is required or whether a hearing must be held."); 5 Wayne R. LaFave *et al.*, *Criminal Procedure* § 18.3(b) n.29 ("Because Congress said 'any,' there is no authority for excluding some pretrial motions on the basis that they do not require a significant amount of thought or attention by the court." (certain internal quotation marks omitted)).  Were the Tenth Circuit to adopt Suggs's approach, the potential for significant confusion on the part of the district courts and parties would be substantial.  Also, such a drastic change in the manner in which "pretrial motions" are considered under the Act would, in the Court's view, dramatically increase the likelihood of inconsistent application of the Act's tolling provisions by the courts in this circuit.[6]  These are reasons enough for this Court to decline to follow the Fourth Circuit down the path it appears to be taking in *Parker.*

---

[6] This is so, in part, because the Court routinely relies on the CM/ECF Speedy Trial calculator when setting criminal trial dates.  CM/ECF counts every motion filed before trial as an "excludable" event.  Under Suggs's approach, each district judge would be required to keep a separate ledger by hand for each criminal case, noting which pretrial motions were not really pretrial motions for Speedy Trial purposes.

7

b. *Evidentiary Notices Styled as Motions*

Some courts have held that giving notice of intent to use evidence, even if captioned as a motion of some sort, is not a pretrial motion for purposes of § 3161(h)(1)(D). *See, e.g.*, *United States v. Van Smith*, 530 F.3d 967 971 (D.C. Cir. 2008); *United States v. Mentz*, 840 F.2d 315, 329 (6th Cir. 1988). On this basis, Suggs attacks the Government's Motion *in Limine* (ECF No. 97), which led to five excludable days in block C, as nothing more than an evidentiary notice masquerading as a motion—likely because the Government knew it needed to pad the Speedy Trial clock. (ECF No. 123 at 6–8.) The Court need not decide whether the Tenth Circuit would acknowledge a distinction between pretrial motions and veiled evidentiary notices, because the Court finds that the Government's Motion *in Limine* was a motion, not a notice.

The Motion *in Limine* sought a ruling admitting certain 911 calls over anticipated Confrontation Clause and hearsay objections (ECF No. 97 at 4–8), and admitting certain exhibits as potentially probative of character for truthfulness under Federal Rule of Evidence 608(b) (*id.* at 8–10). In relevant part, the Court ruled as follows on the Government's requests:

> This motion is unusual in that it seeks a ruling that certain evidence is *admissible* for certain purposes, not that evidence should be *excluded*.
>
> Suggs filed no response by the appointed deadline, nor has he since filed a response. The Court therefore deems the motion confessed. The Court, however, considers it inappropriate to rule preemptively that certain evidence *will* be admitted. The Court rules only that Suggs has forfeited any argument for exclusion that could have and naturally should have been raised in opposition to the Government's motion. To that extent, the Government's motion will be granted.

8

(ECF No. 112 at 1 (emphasis in original; citation omitted).)

Suggs argues that the Court's statement about the "unusual" nature of the motion shows that it was, as he suspected, an evidentiary notice styled as a motion. (ECF No. 123 at 7–8.) But when the Court stated that the motion was unusual, it was merely stating that most motions *in limine* seek to exclude evidence. That does not mean the Government's Motion *in Limine* cannot fairly be considered a motion *in limine*. The Tenth Circuit defines such a motion as "a request for guidance by the court regarding an evidentiary question, which the court may provide at its discretion to aid the parties in formulating trial strategy." *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995) (internal quotation marks omitted). The Government's motion fits that definition in every respect.

To be sure, the Tenth Circuit's definition is broader than the typical legal definition. *See Black's Law Dictionary*, *s.v.* "motion in limine" (10th ed. 2014) ("A pretrial request that certain inadmissible evidence not be referred to or offered at trial."). And the undersigned's practice standards presume that the moving party is seeking exclusion, not admission. *See* WJM Revised Practice Standard III.F.1 ("A proper motion *in limine* * * * attaches the relevant portions of any exhibit the party seeks to exclude, and/or . . . quotes the expected testimony the party seeks to exclude . . . ."). But the fact remains that the Government's motion meets the Tenth Circuit test.

Even if the Tenth Circuit definition incorporated the concept of evidentiary exclusion, as distinct from admission, it does not follow that the Government's motion was not a "pretrial motion" *of any sort* (and so must be nothing more than a disguised evidentiary notice). A motion to preemptively overrule expected evidentiary objections is uncommon, but Suggs cites no authority, and the Court is aware of none, frowning

upon such motions.  Moreover, at a minimum, the Government's Confrontation Clause and hearsay arguments as to the 911 calls (ECF No. 97 at 4–8) raised significant evidentiary questions that would have required answers from this Court but for Suggs's confession of the motion by failure to respond.  Accordingly, the Government's Motion *in Limine* was legitimately a motion, not an evidentiary notice.  It properly tolled the Speedy Trial clock.[7]

* * *

In light of the foregoing, Suggs's challenge under the Speedy Trial Act fails.

## B.     Speedy Trial Under the Sixth Amendment

The Sixth Amendment states that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  The remedy for violating this right is dismissal of the indictment—apparently with prejudice.  *United States v. Seltzer*, 595 F.3d 1170, 1175 (10th Cir. 2010).  "[I]t is the prosecution's burden (and ultimately the court's) and not the defendant's responsibility to assure that cases are brought to trial in a timely manner."  *Id.* at 1175–76.

The factors to consider in the Sixth Amendment speedy trial analysis are: "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his desire for a speedy trial; and (4) the determination of whether the delay prejudiced the defendant."  *Id.* at 1176.  "[T]hese factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process."  *Barker v. Wingo*, 407 U.S. 514, 533 (1972).  But the Court need not go further than the first factor if the delay was not

---

[7] In any event, to declare otherwise would not change the outcome because the excluded days would drop from 326 down to 321—meaning that Suggs went to trial on precisely the seventieth day of the Speedy Trial clock.  (*See* Part II.A.1, above.)

"presumptively prejudicial." *Doggett v. United States*, 505 U.S. 647, 651–52 (1992) ("Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay . . . ." (internal quotation marks omitted)); *United States v. Yehling*, 456 F.3d 1236, 1243 (10th Cir. 2006) ("The remaining factors are examined only if the delay is long enough to be presumptively prejudicial.").

The Tenth Circuit has stated that "delays approaching one year are presumptively prejudicial," *United States v. Larson*, 627 F.3d 1198, 1208 (10th Cir. 2010), but also that eleven months is *not* presumptively prejudicial, *United States v. Abdush-Shakur*, 465 F.3d 458, 465 (10th Cir. 2006) ("[T]he parties disagree as to whether the relevant period of delay under consideration was eleven or fourteen months. The latter delay, but not the former, might qualify as presumptively prejudicial."). The Tenth Circuit has also characterized "a year" as the "bare minimum" of presumptive prejudice. *United States v. Margheim*, 770 F.3d 1312, 1326 (10th Cir. 2014).

1. <u>Length of the Delay</u>

Delay is measured from "when the defendant is arrested or indicted, whichever comes first." *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir. 2004). Suggs was indicted (before his arrest) on February 21, 2018. (ECF No. 1.) His trial began thirteen months and four days later. The delay was therefore presumptively prejudicial and the Court must go on to examine the remaining three factors.

However, as to this factor's independent significance when weighed against the others, it amounts to little. "[A] year" is the "bare minimum" of presumptive prejudice. *Margheim*, 770 F.3d at 1326. Only thirty-two days passed between the one-year

11

anniversary of his indictment and the beginning of trial.  Only twenty-six days passed between the one-year anniversary of his arrest and beginning of trial.  This is much different than the "nearly one additional year" that the Tenth Circuit found in *Margheim* to weigh "entirely in [the defendant's] favor."  *Id.*

      2.     <u>Reason for the Delay</u>

"The reason for a delay weighs against the government in proportion to the degree to which the government caused the delay. . . .  [C]ontinuances and other motions filed by the defendant do not weigh against the government."  *United States v. Batie*, 433 F.3d 1287, 1291 (10th Cir. 2006).

Here, six days elapsed between indictment and arrest, and those days must be attributed to the Government.  Then, for slightly more than two months (from arrest and initial appearance on February 27, 2018, through Suggs's first EOJ motion on April 30, 2018), there was no delay—all parties were preparing for the original May 7, 2018 trial setting.  (*See* ECF No. 22.)  Then came five months of delay (April 30 through September 29) occasioned by Suggs's two EOJ motions.  (ECF Nos. 35, 51.)

By the time Suggs's second EOJ continuance expired on September 29, 2018, he had filed his Motion to Suppress (on September 7).  (ECF No. 54.)  The Government's original response deadline was September 21 but the Court granted the Government's unopposed request for a one-week extension.  (ECF Nos. 55–57.)  The Government therefore filed its response brief on September 28.  (ECF No. 58.)  On October 2, the Court ordered Suggs to file a reply brief by October 12.  (ECF No. 59.)  Suggs filed his reply brief on the appointed deadline.  (ECF No. 63.)

There was no action on the motion between October 12 and December 28, 2018.  On the latter date, the Court ordered the Government to file a supplemental brief by

January 3, 2019, that would hopefully clear up some factual confusion in previous briefing. (ECF No. 69.) The Government did so on the appointed deadline. (ECF No. 70.) The next day, January 4, 2019, the Court set an evidentiary hearing for February 25, 2019. (ECF No. 71.) The Court held the evidentiary hearing as scheduled, and issued its ruling on March 11, 2019. (ECF No. 89.) Also on March 11, the Court reset trial for March 25. (ECF No. 90.) For the next two weeks, there was no delay—the parties were rapidly preparing for the March 25 trial setting. And trial commenced, as scheduled, on March 25, 2019. (ECF No. 125.)

Considering the foregoing, there were slightly less than eleven months of delay that can be fairly attributed to either party (February 21 to 27, 2018, plus April 30, 2018, through March 11, 2019).[8] Of that, five months are directly attributable to Suggs's EOJ continuances, plus another half-month added to that before Suggs filed his reply brief in support of the Motion to Suppress. In other words, fully half of the relevant delay is attributable to Suggs "and this period weighs against the government not at all." *Batie*, 433 F.3d at 1291. The remaining half, while the Court evaluated the Motion to Suppress, is considered delay attributable to the Government. *See id.* However, the Government did not intend or procure this delay, so it weighs "lightly" against the Government. *Id.*

The Court further notes that "less delay is tolerated for ordinary street crimes, and more delay for complex conspiracy charges." *Id.* at 1290. A felon-in-possession

---

[8] As already stated (Part II.B.1), there were thirteen months of total delay, but neither party has cited to the Court a case holding that delay occasioned by a reasonable amount of trial preparation time—time which both parties need—is attributable to either side. *Cf.* 18 U.S.C. § 3161(c)(2) ("Unless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears . . . .").

charge usually falls toward the "ordinary street crime" end of this continuum. This case, however, was the most elaborate felon-in-possession prosecution the undersigned has seen. As summarized elsewhere (*see* ECF No. 89 at 1–11), this case was primarily a whodunit mystery—who shot at Daniel Johnson on the evening of January 3, 2018? The Government set out to prove that it was Suggs, and the felon-in-possession charge was the federal crime most applicable to the conduct in question. So, although felon-in-possession is one of the most routinely seen charges in the federal court system and a conviction is usually easy to obtain, this felon-in-possession prosecution did not fit the typical mold. To be sure, it was not a complex conspiracy case, but nor was it an ordinary street crime. Thus, the Court finds that the nature of the charge should not weigh against the Government in these circumstances.

In this light, the Court finds that the reason-for-the-delay factor does not obviously tip in either direction, and so favors neither party.

### 3. Assertion of Desire for Speedy Trial

"Perhaps most important is whether the defendant has actively asserted his right to a speedy trial. This is not satisfied merely by moving to dismiss after the delay has already occurred. Such a motion could be, indeed may well be, strategic. The question, instead, is whether the defendant's behavior during the course of litigation evinces a desire to go to trial with dispatch." *Batie*, 433 F.3d at 1291.

Only one event even arguably counts as an active assertion of the right to a speedy trial. Suggs personally wrote a letter and mailed it to the Court, which the Court received on November 16, 2018. (ECF No. 66.) It begins, "This letter is to address the court and assert my speedy trial rights." (*Id.* at 1.) The letter then goes on to explain that, based on the briefing submitted, the Motion to Suppress appeared ripe for ruling.

14

The letter then concludes, "I would like to make it clear that I object to any and all continuances and I would like to be brought to trial within the 70 day speedy trial clock." (*Id.*) The Court struck that letter, explaining as follows:

> As the Defendant, Mr. Suggs has the right to have counsel appointed to represent him or he has the right to represent himself, but he does not have the right to hybrid representation. *United States v. Hill*, 526 F.2d 1019, 1025 (10th Cir. 1975). Because Defendant continues to be represented by counsel, he cannot be represented and still continue to file documents on his own behalf. Accordingly, [the letter] is STRICKEN.

(ECF No. 67.)

No party cites any authority for whether an improperly submitted *pro se* letter, stricken by the Court, should still be considered for its effect on this factor of the Sixth Amendment speedy trial analysis. Without question, the Court has "no *duty* to consider pro se motions by a represented defendant, [and] likewise has no duty to investigate whether the defendant is trying to make a pro se motion." *United States v. Dunbar*, 718 F.3d 1268, 1278 (10th Cir. 2013) (emphasis added). But the Court still has *discretion* to consider *pro se* filings. *United States v. Jarvi*, 537 F.3d 1256, 1262 (10th Cir. 2008).

Although the Court struck Suggs's *pro se* letter, the Court exercises its discretion to consider it for the limited purposes presented here. The letter therefore weighs somewhat in his favor, but it must still be weighed against the slightly more than five months of delay attributable to him through his EOJ motions and Motion to Suppress. "The question . . . is whether the defendant's behavior during the course of litigation evinces a desire to go to trial with dispatch," *Batie*, 433 F.3d at 1291, and surely this means the *entire* course of litigation. One explicit assertion of the right to a speedy trial later in the case cannot entirely nullify the significance of delay *the defendant requested*

earlier in the case. Accordingly, this factor weighs in Suggs's favor, but only slightly.[9]

4. <u>Prejudice</u>

The Court must "assess prejudice in light of the interests that the speedy trial right was designed to protect," namely, "(i) the prevention of oppressive pretrial incarceration; (ii) the minimization of anxiety and concern of the accused; and (iii) minimization of the possibility that the defense will be impaired." *Seltzer*, 595 F.3d 1170, 1179 (10th Cir. 2010). The third factor is "the most serious," followed by the first and then the second. *Id.* at 1179–80. The Court will discuss the factors in that order.

    a. *Impairment of the Defense*

Mr. Suggs argues for impairment of his defense as follows:

> Here, Mr. Suggs's defense is severely impaired by the absence of a potential alibi witness. Nearly 15 months after the events underlying his criminal charge,[10] Mr. Suggs is unable to locate his sister, whom he was with[,] at, or shortly before, the time of the alleged shooting. Since that time, his sister moved out [of] their step-mother's house, and Mr. Suggs has been unable to get in contact with her. Had Mr. Suggs been brought to trial sooner, he may have been able to call her as a witness to bolster his defense. Instead, his alibi witness is unavailable.

(ECF No. 123 at 14 (footnote omitted).)

The Supreme Court has declared that "[i]f witnesses die or disappear during a

---

[9] Suggs argues that the motion currently under consideration should also count in his favor as an assertion of a desire for a speedy trial. (ECF No. 123 at 13.) But *Batie* says that it does not count: "[Assertion of the speedy trial right] is not satisfied merely by moving to dismiss after the delay has already occurred." 433 F.3d at 1291. Indeed, it is nonsense to claim that a motion to dismiss the indictment, filed shortly after 8:00 AM on the morning of trial, should count as an assertion of a desire for a speedy trial.

[10] Only thirteen months are attributable to his *federal* prosecution. (*See* Part II.B.1, above.) From January 4 until his federal arrest on February 27, 2018, Suggs was solely in state custody. It is not clear if he remained concurrently in state pretrial detention after that—no party has informed the Court of any state charges brought against Suggs.

16

delay, the prejudice is obvious." *Barker*, 407 U.S. at 532. But for three reasons, the Court finds that Suggs has failed to establish that any witness is missing.

First, Suggs makes this factual claim—about his sister's whereabouts and his inability to contact her—through attorney argument only. "Counsel's arguments are not evidence." *Luevano v. Holder*, 660 F.3d 1207, 1213 (10th Cir. 2011).

Second, even if the Court were to accept counsel's arguments as evidence, Suggs's claim that he "has been unable to get in contact with" his sister is ambiguous and insufficient. It does not necessarily mean that Suggs knows nothing regarding her whereabouts or how to contact her. Nor does it say anything about the efforts Suggs or counsel (or counsel's investigator, if any) has made to contact her. Thus, the claim fails to establish that his sister is missing.

Third, claims of prejudice overlap to an important degree with the previous speedy trial consideration, *i.e.*, whether the defendant asserted his or her speedy trial rights. *See Barker*, 407 U.S. at 531 ("Whether and how a defendant asserts his [speedy trial] right is closely related to the other factors . . . . The strength of his efforts will be affected . . . most particularly by the personal prejudice . . . that he experiences."). If losing contact with his sister due to passage of time was a real risk, Suggs, through counsel, should have raised the issue with the Court much earlier—certainly no later than it became apparent the sister was missing, so that the parties could explore how she might be located (including through efforts funded by Court-authorized expenditures, if needed). But even in his now-stricken *pro se* letter, this possibility goes unmentioned.

For all these reasons, the Court finds that Suggs has failed to establish an

impairment to his defense.

        b.     *Oppressive Pretrial Incarceration*

The case law is somewhat ambiguous regarding whether the "prevention of oppressive pretrial incarceration" factor, *Seltzer*, 595 F.3d at 1179, is intended to suggest that pretrial detention is *per se* "oppressive" and therefore *per se* prejudicial in some measure, *see Barker*, 407 U.S. at 532–33 (discussing the disadvantages of pretrial detention in broad terms, as if always applicable when considering prejudice); or, in contrast, if this factor requires something beyond the ordinary disadvantages of pretrial detention, *see Margheim*, 770 F.3d at 1329–30 (defendant was held in eighteen-hour lockdown); *Seltzer*, 595 F.3d at 1180 (government manipulated defendant's pretrial detention by imposing a federal detainer pending charges while defendant was in state custody, preventing defendant from obtaining a bond hearing either in state or federal court).

If the *per se* approach is correct, the Court would expect a clear statement to that effect. In other words, the case law would set forth factors to evaluate and then require the district courts to evaluate them in light of pretrial detention's necessarily "oppressive" nature. The Court has found no such guidance in the case law. Moreover, a defendant in the federal system will be detained pending trial only when a judicial officer, proceeding under the Bail Reform Act, finds and concludes after a hearing "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). In such a circumstance, the "judicial officer *shall* order the

18

detention of the [defendant] for trial." (*Id.* (emphasis added).)[11]  It would be odd in the extreme to deem pretrial detention inherently "oppressive" in circumstances where the Bail Reform Act *requires* the detention.  The Court thus presumes that, as to this factor, a defendant must demonstrate something beyond the ordinary disadvantages of pretrial detention.

Suggs's only argument in this regard is that the length of his detention has been "excessive and must way toward a finding of prejudice."  (ECF No. 123 at 13.)  The Court will weigh the length of his detention in the balancing analysis, below, because the length of detention is already "presumptively prejudicial."  (*See* Part II.B.1, above.)  But simply asserting the length of detention does not establish that it was "oppressive."  Thus, Suggs has nothing to offer under this consideration beyond what he has already argued.

        c.      *Anxiety*

The anxiety factor looks for "any special harm suffered which distinguishes [the defendant's] case from that of any other arrestee awaiting trial."  *United States v. Dirden*, 38 F.3d 1131, 1138 (10th Cir. 1994).  Here, Suggs says that he "is believed to suffer from post-traumatic stress disorder (PTSD), which is exacerbated by his lengthy pretrial incarceration.  [He] has sought counseling from a psychiatrist and programming while in custody in order to deal with this disorder."  (ECF No. 123 at 14.)

Again, this comes by way of attorney argument only, not competent evidence.  Moreover, it is telling that, once again, this contention was never raised earlier in the prosecution, and was only brought to the Court's attention in the context of the instant

---

[11] The magistrate judge made such a finding and order in this case.  (ECF No. 20.)

19

motion. The Court therefore disregards this argument.

5. <u>Synthesis</u>

Taking the four factors together—length of the delay, reason for the delay, assertion of speedy trial rights, and prejudice—the Court finds as follows.

The factors deserving the most weight are the minimal delay beyond the one-year presumptive threshold, and the recognition that Suggs and the Government are about equally responsible for most of the delay during the first year. Suggs minimally—and in a purely *pro forma* manner—asserted his speedy trial rights in November 2018, but this does not outweigh the foregoing considerations. Suggs also suffered no cognizable prejudice in terms of impairment of his defense, oppressive pretrial conditions, or unusual anxiety. Even if the Court were to disregard the lack of competent evidence in that regard, it still would not tip the scales sufficiently in his favor to justify the "drastic remedy" of dismissing the indictment. *Batie*, 433 F.3d at 1293. In sum, no violation of the Sixth Amendment speedy trial guarantee occurred.

## III. CONCLUSION

For the reasons stated, Suggs's Amended Motion to Dismiss for Violation of Speedy Trial Rights (ECF No. 123) is DENIED.

Dated this 29th day of April, 2019.

BY THE COURT:

_____
William J. Martinez
United States District Judge