**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Criminal Case No. 18-cr-089-WJM

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**1.     PERRY WAYNE SUGGS, JR.,**

      Defendant.

---

**ORDER ON REMAND FROM THE TENTH CIRCUIT APPLYING THE**
**GOOD FAITH EXCEPTION TO THE EXCLUSIONARY RULE AND**
**DENYING DEFENDANT'S MOTION TO SUPPRESS**

---

      The Government charges Defendant Perry Wayne Suggs, Jr., with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). (ECF No. 24.) This case is before the Court on remand from the Tenth Circuit Court of Appeals, with directions to address whether the good faith exception to the exclusionary rule saves the incriminating evidence from suppression. *United States v. Suggs*, 998 F.3d 1125, 1143 (10th Cir. 2021).

      In connection with this mandate, the Court received briefing from the parties, including the United States' Brief In Support of Application of the Good Faith Exception to the Exclusionary Rule ("Government's Brief") (ECF No. 239), Brief of Defendant Suggs ("Defendant's Brief") (ECF No. 241), and the United States' Reply In Support of Application of the Good Faith Exception to the Exclusionary Rule [ECF No. 239] ("Government's Reply") (ECF No. 242).

For the following reasons, the Court finds that the good faith exception to the exclusionary rule applies in this case, and Defendant's Motion to Suppress (ECF No. 54) should still be denied on that basis.

## I. BACKGROUND AND PROCEDURAL HISTORY

The Court presumes the parties' familiarity with the factual and procedural background of this case and only recites the following background and procedural history as is necessary to resolve the issue before the Court.

Following a February 25, 2019 evidentiary hearing (ECF No. 77), on March 11, 2019, the Court issued its Order Denying Motion to Suppress (ECF No. 89). *United States v. Suggs*, 371 F. Supp. 3d 931 (D. Colo. 2019), *vacated and remanded*, 998 F.3d 1125 (10th Cir. 2021). In that Order, the Court denied Defendant's Motion to Suppress evidence seized from his residence and a vehicle on the property on the grounds that the residential and vehicle warrants, which contained challenged language allowing law enforcement to search for "Any item identified as being involved in crime," were sufficiently particular and did not violate the Fourth Amendment. (ECF No. 89 at 4, 28.)

Thereafter, a jury trial was conducted from March 25, 2019 through March 29, 2019, after which the jury convicted Defendant of the sole count in the Superseding Indictment. (ECF Nos. 125, 127–30, 136.) On December 26, 2019, Defendant appealed. (ECF No. 187.)

On June 2, 2021, the Tenth Circuit vacated the denial of Defendant's suppression motion and remanded the case for this Court to determine whether the good faith exception to the exclusionary rule saves the incriminating evidence against Defendant from suppression. *Suggs*, 998 F.3d at 1143. In so holding, the Tenth Circuit

concluded that the residential search warrant violated the Fourth Amendment's particularity requirement because the catch-all phrase authorizing the search and seizure of "[a]ny item identified as being involved in crime" swept too broadly.  *Id.* at 1132–33, 1137.  Specifically, the Tenth Circuit found that "no reasonable construction of the residential search warrant—be it technical, practical, or otherwise" could sustain a ruling that the warrant did not violate the Fourth Amendment's prohibition against general warrants.  *Id.* at 1132–33.

Having found that the warrant lacked particularity, the Tenth Circuit addressed whether the good faith exception to the exclusionary rule applied.  *Id.* at 1140.  Although the Tenth Circuit noted that "[i]t may be within [its] discretion to affirm the denial of Defendant's suppression motion based on the good-faith exception," ultimately, the Tenth Circuit determined that the "more prudent course" was to remand for this Court to fully address the issue in the first instance.  *Id.*  First, the Tenth Circuit recited the legal standard for examining whether the good faith exception applies, stating that the "inquiry on the good-faith exception requires not only an examination of the warrant's text but also a careful consideration of the totality of the circumstances to determine whether officers reasonably relied on the invalid warrant."  *Id.*  Next, the Tenth Circuit provided some guidance for this Court to apply in its analysis of the good faith exception.  The court delineated certain "potentially material aspects of the inquiry" on which it determined the parties disagree, including:

- whether officers limited their search to evidence only related to the vehicle shooting;

- whether Officers Keith Wrede[1] and Aaron Lloyd, who assisted Officer Adam Menter search Defendant's home, either read the warrant or reviewed any of its supporting documents before they executed the search; and

- whether Officer Wrede or Officer Lloyd were otherwise informed of the warrant's contents or briefed on what items to look for during the search.

*Id.* at 1140–41.

Additionally, the Tenth Circuit questioned whether "it [is] fair to say Officer Tomczyk reasonably relied on the residential search warrant when she testified that she never received a copy of the warrant or reviewed Officer Menter's affidavit." *Id.* at 1141. Critically, the court stated that "[e]ven if the district court declines to take additional evidence on remand, the good-faith question is close on the current record. And before issuing a definitive decision, this court would benefit from a district court judgment that addresses the implications of previously unaddressed facts." *Id.*

The mandate issued on June 24, 2021. (ECF No. 224.) At the July 29, 2021 status conference before the undersigned, Defendant was directed to inform the Court by August 27, 2021 as to whether he requested a second evidentiary hearing. (ECF Nos. 230, 232.) The Court received no such request from either party and similarly finds that another evidentiary hearing is not necessary to resolve the instant issue.

## II. LEGAL STANDARD

"Even if a warrant fails to satisfy the Fourth Amendment's particularity

---

[1] The record and Tenth Circuit opinion refers to Keith Wrede as both "Officer" and "Sergeant." It appears as though his correct title is "Sergeant," but the Court will quote the Tenth Circuit opinion as written.

requirement, the exclusionary rule should not be applied to suppress evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate judge that is ultimately deemed invalid." *United States v. Russian*, 848 F.3d 1239, 1246 (10th Cir. 2017) (citing *United States v. Leon*, 468 U.S. 897, 922 (1984)).  According to the Tenth Circuit, "[t]he rationale for *Leon*'s good faith exception is the underlying purpose of the exclusionary rule—namely, to deter police misconduct." *Id.*  When an officer acts in good faith, there is nothing to deter. *Id.* (citation omitted).  Thus, "the suppression of evidence obtained pursuant to a warrant should be ordered only in the unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.* (quoting *United States v. Riccardi*, 405 F.3d 852, 860 (10th Cir. 2005)).

But the officer's reliance on the defective warrant still must be objectively reasonable: the government is not entitled to the good faith exception when a warrant is "so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 922–23.  "The test is an objective one that asks 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Otero*, 563 F.3d 1127, 1134 (10th Cir. 2009) (quoting *Leon*, 468 U.S. at 922 n.23).  "Not every deficient warrant, however, will be so deficient that an officer would lack an objectively reasonable basis for relying upon it." *Id.*  "Even if the court finds the warrant to be facially invalid . . . it 'must also review the text of the warrant and the circumstances of the search to ascertain whether the agents might have reasonably presumed it to be valid.'" *Riccardi*, 405 F.3d at 863

(quoting *United States v. Leary*, 846 F.2d 592, 607 (10th Cir. 1988)).

**III. ANALYSIS**

**A.     Text of the Warrant**

First, the Court reviews the text of the warrant.  The Court acknowledges that the Tenth Circuit found the catch-all phrase swept too broadly to pass muster under the Fourth Amendment.  However, the Court determines that the warrant is not so "facially deficient" that a reasonably well-trained officer would have known the search was illegal.

Here, the warrant specifies the place to be searched and the things to be seized. (ECF No. 54-1.)  The text of the warrant itself specifies that it is Defendant's residence that is to be searched: 2525 Nadine Drive, located in the City of Colorado Springs, County of El Paso, State of Colorado, 80916.  (*Id.* at 2.)   Additionally, in Attachment B there is a detailed list of things to be searched for and seized if found, including under the heading "GENERAL INFO," general photographs of the scene, indicia of residency, and identification which would identify any occupants of the residence; under the heading "GUNS INVOLVED," any and all firearms, any and all ammo, any documentation showing the ownership of a firearm, any and all sales records showing the purchase of a firearm, any projectiles, any and all spent shell casings, and any item commonly used to carry and transport a firearm (*i.e.* holster & gun carrying case, magazines, cleaning kits); under the heading "VEHICLE," indicia of ownership of vehicle and vehicle registration; and under the heading "MISCELLANEOUS," any item identified as being involved in crime.  (*Id.* at 7.)

Although the final catch-all phrase dooms this warrant under the Tenth Circuit's

6

particularity analysis, the Court finds that the good faith exception stretches more broadly in this instance.  An objectively reasonable officer acting in good faith could have read the warrant—particularly the specific list of items to be seized—and interpreted it as restricting the scope of the search to items involved in the shooting under investigation.  *United States v. Christie*, 717 F.3d 1156, 1165 (10th Cir. 2013).

Additionally, the Court agrees with the Government that Officer Menter's detailed description of the vehicle shooting and related investigation in the supporting affidavit bolsters the conclusion that he reasonably relied on the warrant in good faith.  (ECF No. 54-1 at 3–6.)  According to the Tenth Circuit, "[a]lthough a warrant application or affidavit cannot save a warrant from facial invalidity, it can support a finding of good faith, particularly where, as here, the officer who prepared the application or affidavit also executed the search."  *Russian*, 848 F.3d at 1246 (citing *United States v. Simpson*, 152 F.3d 1241, 1248 (10th Cir. 1998) ("[T]he affidavit certainly supports the district court's conclusion that Deputy Johnson [the affiant] in good faith believed he was obtaining a warrant to search Simpson's residence as well as his person."); *see also United States v. Tracey*, 597 F.3d 140, 153 (3d Cir. 2010) ("We also note that the application of the good faith exception is appropriate because [Officer] Holler, who drafted the narrower affidavit and was aware of its limits, led the search team at Tracey's home.")).

Moreover, as explained further below, the totality of the circumstances supports the Court's conclusion that the officers relied on the text of the warrant in good faith, despite the overly broad catch-all phrase.

**B.      Totality of the Circumstances**

The Tenth Circuit observed that "the good-faith question is close on the current record." *Suggs*, 998 F.3d at 1141.  While the Court agrees that the question is a close call, for the following reasons, the Court concludes that law enforcement's reliance on the warrant in this case was objectively reasonable.

First, Officer Menter was involved in the investigation, prepared the warrant, application, and affidavit, in which he identified the types of evidence which he intended to seize, and executed the search.  (ECF No. 239 at 8.)  As described above, a warrant application and affidavit can support a finding of good faith where, as here, the officer who prepared those documents also executed the search.  *See Russian*, 848 F.3d at 1246; *Riccardi*, 405 F.3d at 864 ("officers executing the warrant were involved in the investigation throughout" is a factor in support of applying the *Leon* exception).  This case is similar to *Otero*, in which the Tenth Circuit found that although the drafter of the warrant did not "accomplish her goals" of crafting a warrant that would authorize a search for certain evidence, "one can see how a reasonable officer might have thought that the limitations in the first portion of Attachment B would be read to also apply to the second portion." *Otero*, 563 F.3d at 1134.  As in *Otero*, the Court finds that it is reasonable that Officer Menter believed the specific list of items to be seized applied to the entire warrant, which authorized a search for items related to the vehicle shooting alone, despite the overly broad catch-all phrase.  Indeed, his testimony at the evidentiary hearing supports this conclusion.  Officer Menter testified:

> Q: You also mentioned this last phrase under the title Miscellaneous.  What did you understand that item to include?

> A: The miscellaneous of any item identified as being involved in the crime, I understood is anything related to the incident we were investigating.
>
> Q: Did you understand that to mean that you could look for any item identified as being involved in any crime?
>
> A: No.

(ECF No. 82 at 21.)  Such testimony supports the application of the good faith exception, where Officer Menter, the drafter and executor of the warrant, was aware of its limits and, according to his unrebutted testimony under oath, acted consistently with that understanding.

To the extent Defendant cites *Cassady v. Goering*, 567 F.3d 628 (10th Cir. 2009), *United States v. Dunn*, 719 F. App'x 746 (10th Cir. 2017), and other cases to argue that the good faith exception should not apply (ECF No. 241 at 15), the Court finds this argument is without merit.  In *Cassady*, the warrant authorized a search for "*all* possible evidence of *any* crime in *any* jurisdiction," and there, the officers "treated it as such" and searched for evidence of the crime under investigation *and* "all other evidence of criminal activity."  567 F.3d at 635, 641 (emphasis in original).  In that manner, *Cassady* is distinguishable from this case, where Officer Menter testified that he understood the catch-all phrase to mean "anything related to the incident we were investigating" and that it did *not* mean he could search for any item being involved in any crime.  (ECF No. 82 at 21.)

For the same reasons, the Court finds that *Dunn* is distinguishable.  The *Dunn* warrant was "even broader than the one in *Cassady*," because it authorized a search for "not only any item, but also any item for any reason."  719 F. App'x at 752.  Thus, the *Dunn* court concluded that no executing officer could reasonably rely on the warrant.

However, in this case, the unrebutted testimony of the officers executing the search shows that they interpreted the phrase "any item as being involved in crime" as limited to the crime under investigation.  Considering the totality of the circumstances, the Court finds that—despite the deficiency in the warrant's language identified by the Tenth Circuit in *Suggs*—the officers reasonably relied on the warrant in good faith.

Second, the Court examines "whether officers limited their search to evidence only related to the vehicle shooting," which is one of the factual disputes identified by the Tenth Circuit in *Suggs*.  *See Suggs*, 998 F.3d at 1140–41.  Here, the Court finds that the officers confined their search to the evidence specified in Attachment B of the warrant, which further indicates that they acted in good faith and in objectively reasonable reliance on what they believed was a valid warrant.  *See Russian*, 848 F.3d at 1247; *Otero*, 563 F.3d at 1136 ("The inspectors in this case had reason to believe the warrant was valid, considered themselves authorized to search only for evidence of crimes for which they had probable cause, and conducted their search accordingly."); *Riccardi*, 405 F.3d at 864 ("The officers remained within the terms of the warrant as well as the affidavit, and did not conduct a 'fishing expedition' beyond the scope of the authorized investigation.").

At the evidentiary hearing, Officer Menter testified that "we looked for stuff related to firearms."  (ECF No. 82 at 47.)  Moreover, this testimony is buttressed by the fact that there is no evidence that the officers seized anything other than firearms, ammunition, and other indicia of residency, all of which were listed in Attachment B.  (ECF No. 239 at 12.)  Had the officers seized, for example, evidence such as drugs, scales, baggies, or other evidence completely unrelated to the alleged shooting, the Court would likely

reach a different conclusion.  But here, the items seized were consistent with the alleged crime under investigation: a shooting involving a vehicle.

Third, the Court addresses "whether Officers Keith Wrede and Aaron Lloyd, who assisted Officer Menter search Defendant's home, either read the warrant or reviewed any of its supporting documents before they executed the search."  *Suggs*, 998 F.3d at 1141.  Relatedly, the Court examines "whether Officer Wrede or Officer Lloyd were otherwise informed of the warrant's contents or briefed on what items to look for during the search.  *Id.*

In the Government's Brief, the Government points out that in the Order denying the motion to suppress, the Court noted that Officer Menter's testimony was "scattered" as to what he told Officer Lloyd.  (ECF No. 239 at 9 (citing ECF No. 89 at 8 n.5).) Despite this observation, the Government cites testimony from the evidentiary hearing that the Court finds highly probative of what Officer Menter told both Officer Lloyd and Sergeant Wrede.  Regarding Officer Lloyd, Officer Menter testified:

> Q. Are you aware of specifically what [Officer Lloyd] may or may not have been looking for?
>
> A. I informed him [of] the type of things we were looking for. Obviously indicia [of residency] and, you know, anything related to firearms.  But other than that, I -- you know, I wasn't looking over his shoulder when he was doing his search.

(ECF No. 82 at 35.)  Similarly, regarding what Sergeant Wrede was told in connection with the search, Officer Menter testified:

> Q. Okay.  At the same -- the same questions for Sergeant Wrede: Are you aware of exactly where he was searching?
>
> A. I didn't -- I didn't watch everything he searched, but, you know, he was aware of this case and was aware of what we

were looking for.

(*Id.* at 35–36.)  Although it is true that Officer Menter could not recall precisely what he said to Officer Lloyd and Sergeant Wrede, the Court can reasonably infer from his testimony that these officers were aware of the vehicle shooting and that they were searching for items in connection with that incident, and only that incident.

Additional evidence demonstrating that Sergeant Wrede knew he was searching for evidence related to the shooting includes Bureau of Alcohol, Tobacco, Firearms, and Explosives Task Force Officer Adam Brewer's testimony explaining what Sergeant Wrede told him about the search.  Officer Brewer testified that Sergeant Wrede played a supervisory role in this case when the initial investigation began on January 3, 2018. (ECF No. 82 at 97.)  Further, Officer Brewer testified as follows:

> Q. Based upon your conversations with Sergeant Wrede, did he describe to you what he was looking for when he assisted in the execution of the search of 2525 Nadine Drive?
>
> A. Yes.  Sergeant Wrede explained to me that he was looking for weapons-related items because he was familiar with the case, so he knew generally what they were looking for related to the investigation.
>
> . . .
>
> Q. Based upon your review [of Sergeant Wrede's body-worn camera footage], albeit a long time ago, do you recall whether Sergeant Wrede said or did anything on the body-worn camera to suggest he was looking for anything other than firearms-related items?
>
> A. Based on what I saw and what I remember, no.

(*Id.* at 97–98.)

As noted above, Officer Menter admitted at the evidentiary hearing that he could

not precisely remember what he told the officers before they executed the search

warrant.  (*Id.* at 22.)  However, Officer Menter testified that his normal practice before a

search was to notify officers of the type of evidence for which they are about to search:

> Q. How did Officer Lloyd and Sergeant Wrede know what to
> search for?
>
> A. So Sergeant Wrede was aware of this case prior, I believe
> from the day before.  I can't remember exactly what I said,
> but usually before we execute a search warrant, I notify
> officers, "Hey, we're looking for guns, or we're looking for
> this, or we're looking -- it's a case we're investigating, here's
> the type of stuff we're looking for."
>
> Q. And do you recall if you did that in this case?
>
> A. I don't remember exactly what I said and I can't remember
> the meeting, but that's usually what we do or what I do
> before a -- any type of search warrant to let them -- if
> someone isn't involved in the case, to brief them on what
> we're looking for.

(*Id.* at 22–23; *see also id.* at 42–43.)  Based on this unrebutted testimony, considered in

conjunction with the aforementioned testimony regarding what Sergeant Wrede and

Officer Lloyd knew or were told about the evidence to be seized, the Court finds it

reasonable to conclude that Officer Menter followed his normal practice to tell officers

assisting a search what they are looking for before they started searching.  Such

evidence also supports the application of the good faith doctrine here.

Fourth, the Court examines SWAT Officer Teresa Tomczyk's involvement in this

case.  The final question the Tenth Circuit posed with respect to whether the good faith

application might apply concerned Officer Tomczyk.  The Tenth Circuit queried:

> [I]s it fair to say Officer Tomczyk reasonably relied on the
> residential search warrant when she testified that she never
> received a copy of the warrant or reviewed Officer Menter's
> affidavit?  Maybe the answer is yes, since Officer Tomczyk

> was on Defendant's property only to conduct a protective
> sweep, not to search for any items.  Or perhaps Officer
> Tomczyk relied on the warrant in good faith because her
> supervisor, Sergeant Wolf, had reviewed the entire warrant
> package and directed her to lead the SWAT team in his
> stead.  Then again, maybe not, as the warrant was the
> supposed lawful basis for Officer Tomczyk's entry into
> Defendant's property.

*Suggs*, 998 F.3d at 1141.  In the Order denying the motion to suppress, the Court

concluded that Officer Tomczyk could reasonably rely on the search warrant even

though she did not receive a copy of it.  (ECF No. 89 at 24 n.15.)  However, as the

Tenth Circuit commented in *Suggs*, the Court did not fully explain its reasoning in

reaching this conclusion.  *Suggs*, 998 F.3d at 1140.  It does so now.

As an initial matter, the Government emphasizes that as a SWAT officer tasked

with performing a protective sweep of Defendant's residence, Officer Tomczyk was an

assisting officer in this case.  (ECF No. 239 at 11.)  As such, the Government argues

that under *Wigley v. City of Albuquerque*, 567 F. App'x 606, 610 (10th Cir. 2014), as an

assisting officer, she did not need to review the warrant, nor did she need to

independently assess its validity.  (*Id.*)  In *Wigley*, the Tenth Circuit stated:

> But plaintiffs have not pointed to, nor are we aware of, any
> law clearly establishing that Officer Williamson, as one of the
> many SWAT team members assisting in the execution of the
> warrant, and who was briefed that the search included stolen
> guns[] and body armor, had a duty to read the warrant or
> affidavit and assess whether handcuffed detention was
> justified.

*Wigley*, 567 F. App'x at 610.  While Officer Menter's role as leader of the search

required him to read the warrant and ensure its validity, as an assisting officer at the

scene specifically to perform a protective sweep, under *Wigley*, Officer Tomczyk need

not have fulfilled the same obligation.

The Court finds *Wigley* persuasive on this matter and finds it telling that Defendant does not acknowledge *Wigley* in his response.  (*See generally* ECF No. 241.)  However, given the Tenth Circuit's direction that the Court should give the disputed issues it identified a "full vetting," the Court finds it necessary to examine the specific testimony surrounding Officer Tomczyk's involvement in this case for a proper totality of the circumstances analysis.

The Government explains in the Government's Brief that the record "is not clear as to whether Officer Tomczyk received a copy of the warrant or reviewed the affidavit." (ECF No. 239 at 13 n.2.)  Officer Tomczyk testified that she did not believe that she was given a copy of the search warrant (ECF No. 82 at 82), or reviewed Officer Menter's affidavit or any of the attachments to the affidavit (*id.* at 89).  However, Officer Tomczyk apparently did receive some type of information related to the search.  She testified that she obtained information about Defendant "[t]hrough [SWAT] Sergeant Wolf" and through her "review [of] the packet provided by Officer Menter," which contained "information given about the location of the search warrants and then factors which would contribute to a high-risk search warrant."  (*Id.* at 67.)

Despite this less than clear testimony as to what Officer Tomczyk knew, as the Tenth Circuit stated in its opinion, Officer Tomczyk was on Defendant's property "only to conduct a protective sweep, not to search for any items."[2]  *Suggs*, 998 F.3d at 1141.

---

[2] Defendant argues it is a "misnomer" to claim that Officer Tomczyk's search of the house was a "protective sweep" as defined by the Fourth Amendment.  (ECF No. 241 at 13.) He contends that the facts in this case, including that Defendant was in custody at the time of the protective sweep, do not justify a "protective sweep."  (*Id.* at 13 n.3.)  However, the Tenth Circuit conclusively stated that "Officer Tomczyk was on Defendant's property only to conduct a protective sweep, not to search for any items."  *Suggs*, 998 F.3d at 1141.

It appears as though Defendant's attempt to recategorize the protective sweep as a part

Officer Tomczyk testified that she was contacted by Sergeant Wolf, who told her that officers had obtained a search warrant for Defendant's residence and an arrest warrant for Defendant. (ECF No. 82 at 66.) She further testified that she was "advised that a[n] arrest warrant was obtained for first degree assault, which is a felony, and a weapon by a previous offender. We were told it stemmed from a road-rage situation that resulted in a shooting." (*Id.*)

Defendant argues that the Government has offered no competent evidence that Officer Tomczyk understood the search as being limited to evidence related to the shooting. (ECF No. 241 at 14.) Moreover, he argues that "it would be anomalous to hold that Office Tomczyk relied on the residential search warrant in good faith when she freely admitted that she never even had a copy of the warrant." (*Id.* at 14–15.) It is true that the evidence with respect to Officer Tomczyk's reasonable reliance on the warrant is arguably weak in comparison with the reliance of Officer Menter, Sergeant Wrede, and Officer Lloyd, given that it was not Officer Menter—drafter of the warrant—who advised her of the search's parameters. However, Officer Tomczyk's testimony that she was aware of the vehicle shooting demonstrates that she had a basis to believe that the weapons she discovered in the car in the carport were connected to the alleged crime under investigation. Moreover, this analysis considers the totality of the circumstances; under these circumstances, the Court concludes that the evidence concerning Officer Tomczyk, particularly because *she was not an officer involved in the search,* does not militate in favor of suppressing the evidence in question.

---

of the search is an effort to recast Officer Tomczyk's role from SWAT officer conducting a protective sweep to an officer conducting the search. However, given the Tenth Circuit's conclusion that Officer Tomczyk was at Defendant's residence to perform a protective sweep and not to search for items, the Court finds this argument to be without merit.

Fifth, in addition to signing the warrant itself, the magistrate judge signed Officer Menter's application and affidavit.  (ECF No. 54-1.)  The application and affidavit specifically incorporate by reference Attachment B, which contains the list of items to be seized and the catch-all phrase that the Tenth Circuit found impermissibly broad.  (*Id.* at 3–7.)  According to the Tenth Circuit, a "magistrate judge's approval of the application and affidavit—and reference to both documents in the first paragraph of the warrant—further supports the objective reasonableness of [an officer's] reliance on the warrant." *Russian*, 848 F.3d at 1247 (citing *United States v. Allen*, 625 F.3d 830, 839 (5th Cir. 2010) (reasoning "the executing officer who prepared the warrant, the affidavit and the attachment . . . had additional objective reason to believe the warrant was valid," because the magistrate judge "signed not only the warrant, but also the affidavit, to which the list of items to be seized was attached")).  "Courts applying the good faith exception 'have concluded that, at least when the magistrate neither intimates he has made any changes in the warrant nor engages in conduct making it appear he has made such changes, the affiant-officer is entitled to assume that what the magistrate approved is precisely what he requested.'"  *Id.* (citing 1 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 1.3(f) (5th ed. 2012)).

Despite Defendant's argument that "the State of Colorado district court judge became nothing more than a 'rubber stamp' in issuing two separate search warrants in this case[,] both of which contained the same fatal flaws," the Court disagrees.  (ECF No. 241 at 9.)  The totality of the circumstances in this case, as described in detail above, lead the Court to conclude that while not the most artfully drafted warrant, given that two different magistrate judges approved the warrants containing the catch-all

language, it was nevertheless reasonable for Officer Menter to rely on the judges' approval of the residential and vehicle warrants and to search the residence for the items listed in Attachment B.

Finally, the Court concludes that excluding the challenged evidence would not serve the underlying purpose of the exclusionary rule. "As the Supreme Court has emphasized, the exclusionary rule is not an individual right, but rather a judicially fashioned remedy whose focus is not on restoring the victim to his rightful position but on deterring police officers from knowingly violating the Constitution." *Russian*, 848 F.3d at 1247 (internal quotation marks and citations omitted). It is worth noting that although Officer Menter was not required to obtain a separate vehicle warrant, he obtained one nonetheless. (ECF No. 54-5.) A premises search warrant "permits officers to search vehicles located on the curtilage when the objects of the search might be located in those vehicles." *United States v. Dahlman*, 13 F.3d 1391, 1394–95 (10th Cir. 1993). Officer Menter's "belt and suspenders" approach of obtaining a second but legally unnecessary warrant, out of what appears to be an abundance of caution, demonstrates that at each step of the investigation, he made every effort to comply with the law. *See Russian*, 848 F.3d at 1247.

"[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon*, 468 U.S. at 916. As the Supreme Court observed in *Leon*, "since judges and magistrates are 'neutral judicial officers' with 'no stake in the outcome of particular criminal prosecutions,' the exclusionary sanction 'cannot be expected significantly to deter them.'" *Russian*, 848 F.3d at 1247 (quoting *Leon*, 468 U.S. at 917). From the totality of the circumstances, the Court easily

concludes Officer Menter is not the law enforcement official for whom the exclusionary rule was judicially crafted.

Accordingly, given the reliance in good faith by Officer Menter and the other officers conducting the search in question on the two warrants they reasonably believed to be valid, the Court declines to apply the exclusionary rule in this case.

## IV. CONCLUSION

For the reasons stated above, the Court ORDERS that the good faith exception to the exclusionary rule applies in this case.  Accordingly, Defendant's Motion to Suppress, considered on remand from the Tenth Circuit, (ECF No. 54), is DENIED.

Dated this 25th day of January, 2022.

BY THE COURT:

William J. Martinez
United States District Judge