IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Criminal Case No. 18-cr-089-WJM
(Civil Case No. 24-cv-1875-WJM)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.     PERRY WAYNE SUGGS, JR.,

    Defendant.

## ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

This matter is before the Court on Defendant Perry Wayne Suggs, Jr.'s Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (the "Motion"), in which he asserts that his counsel was ineffective in three ways. (ECF No. 262.) The Government filed a response. (ECF No. 265.)

Shortly before his reply deadline, Suggs filed a letter with the Court (the "Letter") informing it that he had not yet received the Government's response. (ECF No. 266.) The Letter also added further detail to his claims of ineffective assistance of counsel. (*Id.*) Suggs states therein that, "if the Court feels like more details are needed, [he] would like to ask the Court for an opportunity to cure deficiencies." (*Id.* at 1.)

Upon receipt of the Letter, the Court directed the Clerk to mail a copy of the Government's response to the address Suggs provided in the Letter and ordered an updated deadline for Suggs's reply. (ECF No. 267.) Although Suggs's reply was

technically filed three days late, the Court accepts and considers the untimely filing in the interests of justice.  (ECF No. 269.)

Suggs begins his reply by stating that "the Court has not responded to my request to cure deficiencies."  (ECF No. 269 at 1.)  However, Suggs has now had an opportunity to add further detail to his assertions of ineffective assistance of counsel in both the Letter and his reply.  (ECF Nos. 266, 269.)  Accordingly, his "request to cure deficiencies" is denied to the extent he seeks an opportunity to submit still further briefing.  As a result, the Motion is ripe for the Court's review.

For the following reasons, the Motion is denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

In January 2018, a pedestrian and a driver got into a verbal altercation at an intersection in Colorado Springs.  (ECF No. 223 at 2.)  The driver pulled out a gun and shot at the pedestrian but missed.  (*Id.* at 2–3.)  The driver sped off and the pedestrian called 911.  (*Id.* at 2.)  Police officers later identified Suggs as the driver and owner of the vehicle involved, a BMW.  (*Id.* at 3*;* ECF No. 89 at 1.)

Law enforcement obtained a warrant to search Suggs's home.  (ECF No. 223 at 3.)  The warrant incorporated by reference "Attachment B," which described the targeted property as follows:

> The following person(s), property or thing(s) will be searched
> for and if found seized:
> GENERAL INFO
> - General photographs of the scene
> - Indicia of residency
> - Identification which would identify any occupants of the residence
> GUNS INVOLVED

2

- Any and all firearms: specify if known
- Any and all ammo: specify if known
- Any documentation showing the ownership of a firearm
- Any and all sales records showing the purchase of a firearm
- Any projectiles
- Any and all spent shell casings
- Any item commonly used to carry and transport a firearm (i.e. holster & gun carrying case, magazines, cleaning kits)

VEHICLE
- Indicia of ownership of vehicle
- Vehicle registration

MISCELLANEOUS
- Any item identified as being involved in crime

(*Id.*)

When police officers arrived at Suggs's home to execute the search warrant, Officer Teresa Tomczyk shined her flashlight through the window of a SUV—a different vehicle than the BMW involved in the shooting—parked outside the home, looking for persons who might be hiding. (*Id.*) She saw two guns, a firearm magazine, and two handgun cases. (*Id.*) Officer Menter then obtained a second warrant to search the SUV, which was almost identical to the residential search warrant. (*Id.* at 5.)

Among other items, police officers seized a bank statement from the home and the vehicle registration document from the SUV. (*Id.*)

A grand jury indicted Suggs on one count of being a felon in possession of a firearm. (*Id.*) Suggs moved to suppress the evidence found in his home and the SUV, arguing that the residential search warrant was invalid because it violated the Fourth

3

Amendment's particularity requirement and that the evidence found in the SUV should be suppressed as fruit of the initial, unconstitutional search.  (*Id.*)  The Court denied Suggs's motion to suppress.  (*Id.*)

On the first day of trial, Suggs moved to dismiss the indictment for violations of his statutory and constitutional speedy trial rights (the "Speedy Trial Motion").  (ECF No. 123.)  The jury returned a guilty verdict at the conclusion of trial, after which the Court denied the Speedy Trial Motion in full.  (ECF Nos. 130, 145.)

Suggs filed a *pro se* notice of appeal "from the final judgment of conviction, order denying motion to suppress, and order denying motion to dismiss for violation of speedy trial rights."  (ECF No. 187.)  The Tenth Circuit appointed the Federal Public Defender for the District of Kansas ("FPD") to represent Suggs in his direct appeal.  (ECF No. 201.)

Ultimately, only the Court's denial of Suggs's motion to suppress was briefed on direct appeal.  (ECF No. 223 at 5.)  The Tenth Circuit "concluded that the residential search warrant violated the Fourth Amendment's particularity requirement and cannot be severed."  (*Id.* at 23.)  In so concluding, the Circuit took issue with the warrant's "catch-all phrase authorizing the search and seizure of '[a]ny item identified as being involved in crime.'"  (*Id.* at 7.)  Absent an applicable exception, the Circuit further reasoned, the evidence obtained from the SUV was subject to suppression as the fruit of an unconstitutional search.  (*Id.* at 28.)  However, the Circuit "remand[ed] for the district court to determine whether the good-faith exception saves the incriminating evidence against [Suggs] from suppression."  (*Id.* at 25.)

On remand, this Court concluded that the good faith exception to the

exclusionary rule applied, and again denied Suggs's motion to suppress on that alternative ground.  (ECF No. 245.)  The Tenth Circuit affirmed.  (ECF No. 259.)

## II. LEGAL STANDARD

Section 2255 of Title 28 of the United States Code applies to requests seeking to vacate, set aside, or correct a federal sentence.  A § 2255 petition "attacks the legality of detention . . . and must be filed in the district that imposed the sentence." *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996).  "The purpose of section 2255 is to provide a method of determining the validity of a judgment by the court which imposed the sentence." *Id*.

## III. ANALYSIS

Suggs contends that he received ineffective assistance of counsel because his attorneys:

> (1) Failed to argue that the search warrant was overbroad for the additional reason that it allowed law enforcement to search for indicia of residency;
>
> (2) Failed to address evidence seized from the SUV that showed that the search exceeded the scope of the warrant; and
>
> (3) Failed to raise a speedy trial issue on direct appeal.

(ECF No. 262.)

A court employs a strong presumption that the attorney representing a criminal defendant rendered effective assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Strickland v. Washington*, 466 U.S. 668, 685 (1984).  "To establish ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the defense was prejudiced by that deficient performance." *Smith v. Duckworth*, 824 F.3d 1233, 1249 (10th Cir. 2016)

(citing *Strickland*, 466 U.S. at 687). "An insufficient showing on either element is fatal to an ineffective-assistance claim, rendering consideration of the other element unnecessary." *Smith,* 824 F.3d at 1249.

Deficient performance means that that counsel's representation was objectively unreasonable, *i.e.*, that "'it amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)). To show prejudice, a defendant must demonstrate that there is a reasonable probability that but for counsel's deficient representation the outcome of the underlying proceeding would have been different. *Smith,* 824 F.3d at 1249. In this context, a reasonable probability is that which would undermine confidence that the actual outcome was just. *Strickland*, 466 U.S. at 694. Put another way, a defendant is prejudiced if his counsel's performance deprived him of a fair proceeding. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Where the trial record is uncontested, an ineffective assistance of counsel claim is an issue of law. *Maley,* 1 F.4th at 820; *United States v. Rushin,* 642 F.3d 1299, 1302 (10th Cir. 2011). Having reviewed the pertinent dockets, the governing law, and the parties' briefs, the Court has determined that it need not hold an evidentiary hearing, and Suggs's request for same is denied. *See* 28 U.S.C. § 2255(b) (hearing is not required if "the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief"). (ECF No. 269 at 3.)

**A.     General Info Section of Warrant**

Suggs first contends that his counsel provided ineffective assistance by failing to argue that "[t]he general info section of the warrant was also overbroad." (ECF No. 262

at 4.)  He explains that

> [the general information] section of the warrant allows officer to seize indicia of residency and Identification which would identify any occupants of the residence.  Those provisions show that the warrant was even more broad than the provision previously determined allowing officers to search for indicia of residency and Identify any occupants of the residence when it was specifically know[n] who they need information for.

(*Id.*)

Suggs's argument fails both *Strickland* prongs for two reasons.  First, defense counsel's decision to argue that the warrant to search Suggs's home was overbroad primarily based on the warrant's "catch-all provision," rather than the general information section of the warrant, was undoubtedly a strategic one.  The Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland,* 466 U.S. at 689.  Given that Suggs ultimately prevailed on his argument that the catch-all provision of the warrant failed the Fourth Amendment's particularity requirement, the Court is hard-pressed to find that defense counsel's decision to focus on this argument in the motion to suppress was objectively unreasonable.

Second, Suggs has not shown that he was prejudiced by his counsel's failure to argue that the general information section of the warrant was overbroad.  Suggs contends that, had his lawyers challenged the overbreadth of the general information section of the warrant, "it would transform the warrant to being majority overbroad which would make the evidence seized under the warrant more likely to be suppressed changing the outcome in the end."  (ECF No. 269 at 1; *see also* ECF No. 266 at 2 ("if the issue of the first prong of the general info would have been addressed . . . by

7

counsel that would transform the warrant from being 50% good and 50% bad to 25% good and 75% bad").)

But courts in this Circuit have affirmed warrants authorizing police to search for "indicia of residency." *See, e.g., U.S. v. Sears,* 191 F. App'x 800, 803 (10th Cir. 2006) (affirming denial of motion to suppress search warrant that authorized police to search the defendant's residence of "[i]ndicia of occupancy, residency, and/or ownership of the [residence]"). Moreover, Suggs has not established why the warrant's general information section might reasonably have precluded the application of the good-faith exception to the exclusionary rule—notwithstanding the Tenth Circuit's conclusion that the warrant was facially overbroad. *See United States v. Anderson,* 2023 WL 3092583, at *2 (D. Kan. Apr. 26, 2023) (denying reconsideration of denial of motion to suppress because, "even if the [indicia of occupancy or ownership] provision could be found lacking in particularity, the suppression of evidence obtained from the search would be unwarranted" where defendant "ha[d] shown no error in the court's application of the good faith doctrine"). Indeed, the Court acknowledged on remand that the general information section of the warrant listed "indicia of residency, and identification which would identify any occupants of the residence," but it found the officers relied on the warrant in good faith nonetheless. (ECF No. 245 at 6.) Accordingly, the Court is unpersuaded there is a reasonable probability that, had defense counsel specifically challenged the general information section of the warrant, it would have ultimately tipped the scales in favor of suppressing the evidence at issue.

For these reasons, the Motion is denied to the extent it is based on defense counsel's alleged failure to specifically challenge the general information section of the

8

warrant.

## B.     Evidence Seized from SUV

Suggs next argues he received ineffective assistance of counsel because "certain evidence seized from the ford SUV was never addressed and that evidence being seized shows that the Officers exceeded the scope of the warrant." (ECF No. 262 at 4.)  Suggs elaborates in the Letter that the "items at issue here are insurance paperwork and legal paperwork and also the registration paperwork for the SUV that cle[a]rly had [another person's] name on it none of which could have been seized under a valid warrant." (*Id.;* ECF No. 266 at 3; *see also* ECF No. 265 at 8 (arguing denial warranted under Rule 2(b) based on Suggs's failure to identify evidence at issue).)  He asserts that "seizing items outside of the scope of the warrant show[s] a blatant disregard for the warrant or at the very least that what could or could not be seized was unclear both leading to the same conclusion that all evidence seized must be suppressed." (*Id.; see also* ECF No. 269 at 2 (arguing similarly on reply).)

But defense counsel *did* point to the paperwork that was seized from the SUV when arguing that the good faith exception to the exclusionary rule should not operate to prevent suppression of the evidence.  More specifically, defense counsel argued that,

> [w]hile little was said about the second car that was located at the Suggs home at the motions hearing, there is no question that Officer Menter entered that car and rummaged about the interior to find the proof of ownership. Menter was asked who was the owner of the gray sedan and he said ownership was "determined on scene." [citation omitted] Given that no documents associated with the gray sedan were found during the search of the house, Officer Menter had to enter the gray sedan, which was totally unrelated to the shooting, in order to examine documents within the car showing who owned it. Menter also rummaged in the SUV where he examined and seized legal "paperwork" for Mr.

9

> Suggs, a Colorado registration card, an ENT notice of insurance, and a loan agreement for Mr. Suggs and the BMW. [citation omitted] Officer Menter, knowing that the only car involved in the investigation was a BMW, took full advantage of the non-specific terms of the "Vehicle" section to do a full search of the SUV and seized, among other items, Mr. Suggs' legal paperwork. That document had no possible relevancy to the shooting. The seizure of those documents coupled with the search of the gray sedan shows that the only thing that limited the officers' search was opportunity. The Leary Court was highly critical of situations such as this where the officer had every opportunity to describe the items to be seized with "much more particularity" and chose not to do so. *United States v. Leary*, 846 F.2d at 604.

(ECF No. 241 at 10–11.)

It follows that Suggs cannot establish the first *Strickland* prong, *i.e.*, deficient performance, by claiming that his counsel failed to raise an argument if his counsel *did in fact* raise that argument. Accordingly, the Motion is denied to the extent it is based on Suggs's counsel's alleged failure to address the paperwork seized from the SUV.

## C.  Speedy Trial Issue

Finally, Suggs asserts that he received ineffective assistance of counsel because "the speedy trial issue that was preserved in the district court was never addressed on appeal by counsel." (ECF No. 262 at 4.) This argument also fails.

As noted above, Suggs's Speedy Trial Motion asserted that his rights had been violated based on both the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq.* (the "Act"), and the Sixth Amendment's speedy trial guarantee. (ECF No. 123.) The Court denied the motion in a 20-page Order, finding no violation of the Act had occurred because Suggs was brought to trial within 65 Speedy Trial days, after accounting for tolling events. (ECF No. 145 at 2–10.) The Court additionally found that no violation of Suggs's Sixth

Amendment rights had occurred based on its analysis of the four pertinent factors—length of the delay, reason for the delay, assertion of speedy trial rights, and prejudice. (*Id.* at 10–20.)

Suggs contends that "the factors to determine if a speedy trial violation occurred were not addressed properly by the district court." (ECF No. 266 at 4.) The Court understands Suggs to challenge his counsel's alleged failure to appeal the Court's denial of his Speedy Trial Motion to the extent it asserted a violation of his Sixth Amendment rights.

"When considering a claim of ineffective assistance of counsel for failure to raise an issue, [the Tenth Circuit] look to the merits of the omitted issue." *Hammon v. Ward,* 466 F.3d 919, 9276 (10th Cir. 1999). "If the omitted issue is without merit, appellate counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel." *United States v. Barrett,* 797 F.3d 1207, 1220 (10th Cir. 2015) (citation and alteration omitted).

Suggs has failed to establish that he has a meritorious argument that his Sixth Amendment rights were violated. He contends that the Court did not analyze the second factor—reason for the delay—correctly because "the [G]overnment was responsible for more of the delay and time that should have been attributed to them was not." (ECF No. 266 at 5.) But Suggs does not identify which sources for delay he believes the Court failed to properly attribute to the Government.

As to the third factor, Suggs contends "the right to a speedy trial was asserted by the defendant in a letter to the court as acknowledged by the Court . . . ." (*Id.*) The Court assumes Suggs to mean that the Court improperly credited the single *pro se* letter

11

he sent to the Court asserting his speedy trial rights. (ECF No. 145 at 14–15.) In considering that letter, the Court reasoned that "[o]ne explicit assertion of the right to a speedy trial later in the case cannot entirely nullify the significance of delay *the defendant requested* earlier in the case" by way of his ends of justice motions and motion to suppress. (*Id.* at 15–16 (emphasis in original).) Suggs does not explain why the Court erred by concluding that the letter weighed "only slightly" in his favor in view of the delay attributable to his earlier actions. (*Id.* at 16.)

Finally, as to the fourth factor, Suggs contends that

> the Court addressed prejudice by saying that there were no oppressive pretrial conditions but oppressive pretrial conditions is not apart [sic] of the analysis but oppressive pretrial confinement is apart [sic] of the analysis and those are two different things. [A]nd only some prejudice must be present not all the prejudice factors listed. So being that defendant was incarcerated for the entire judicial process oppressive pretrial confinement exists . . . .

(ECF No. 266 at 4–5.) Suggs appears to misunderstand the Court's analysis. The Court did not find "there were no oppressive pretrial conditions." Rather, the Court reasoned that "[i]t would be odd in the extreme to deem pretrial detention inherently 'oppressive' in circumstances where the Bail Reform Act *requires* detention"—that is, where a judicial officer finds "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." (ECF No. 145 at 18–19 (quoting 18 U.S.C. § 3142(e)(1)) (emphasis in original).) As a result, the Court concluded that "simply asserting the length of detention does not establish that it was 'oppressive,'" which is the same argument Suggs appears to raise again in the Motion. (*Id.* at 19.) Accordingly, Suggs's arguments as to the fourth factor, too, lack merit.

In sum, Suggs has not shown that his appellate counsel omitted a meritorious Sixth Amendment claim from his direct appeal.[1]  For the same reason, Suggs's Motion is denied to the extent it is based on the same ground.

## D.     Appointment of Counsel

Suggs "request[s] to be appointed competent counsel so the issues that have been outlined can be properly addressed."  (ECF No. 262 at 4.)

"There is no constitutional right to counsel beyond the direct appeal of a criminal conviction," *Coronado v. Ward,* 517 F.3d 1212, 1218 (10th Cir. 2008), although "there is a right to counsel in a habeas case when the district court determines that an evidentiary hearing is required," *Swazo v. Wyoming Dept. of Corrections State Penitentiary Warden,* 23 F.3d 332, 333 (10th Cir. 1994).  Here, however, the Court has concluded that an evidentiary hearing is unnecessary.  Moreover, after considering the merits of Suggs's Motion above, the Court remains unpersuaded that the appointment of counsel is necessary.  *See Nicholls v. Long,* 2022 WL 211617, at *10 (10th Cir. Jan. 25, 2022) (affirming district court's denial of appointment of counsel where no evidentiary hearing was warranted the habeas claims were not so complex that petitioner lacked the ability to argue their merits).  Accordingly, Suggs's request for the appointment of counsel is also denied.

---

[1] Even had Suggs presented a colorable argument that he had a meritorious Sixth Amendment claim, the Supreme Court has held "that appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but may rather select from among them in order to maximize success on appeal."  *Smith v. Robbins,* 528 U.S. 259, 288 (2000). Here, again, the Court would be hard-pressed to find that Suggs was prejudiced by his appellate counsel's failure to raise the denial of his Speedy Trial Motion as a constitutional issue on appeal, where his counsel initially *prevailed* on appeal on the issue they chose focus on: the denial of his motion to suppress.

13

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 is DENIED.

Dated this 31st day of July, 2025.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge